IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM THOMAS COATS,

    Plaintiff,                    No. 2:09-cv-1830 KJM KJN P

    vs.

T. KIMURA, et al.,                FINDINGS AND RECOMMENDATIONS

    Defendants.

_____/

I. Introduction

        Plaintiff is a state prisoner, proceeding without counsel and in forma pauperis. This civil rights action is proceeding on plaintiff's September 27, 2010 third amended complaint ("TAC"). On September 6, 2011, defendant Chambers filed a motion to dismiss on the grounds that the TAC fails to state a cognizable deliberate indifference claim under the Eighth Amendment. Plaintiff filed an opposition, and defendant Chambers filed a reply.[1] For the reasons set forth below, the undersigned recommends that defendant Chambers' motion be denied.

---

[1] On October 13, 2011, plaintiff filed a response to defendant's reply. Local Rule 230(*l*) makes no provision for the filing of a surreply. Thus, plaintiff's October 13, 2011 filing is disregarded.

II. <u>Plaintiff's Third Amended Complaint</u>

   Plaintiff's TAC names ten defendants, and alleges deliberate indifference to plaintiff's serious medical needs. (Dkt. No. 22.) Eight defendants filed an answer (dkt. no. 30), and one defendant is deceased (dkt. nos. 37, 72). Plaintiff appended medical records confirming his Hepatitis-C diagnosis, his prescriptions for psychotropic medications for mental illness, and lab results setting forth his viral loads. (Dkt. No. 22 at 6-8; 14.)

   Plaintiff's allegations against defendant Chambers state:

> After a personal interview by Dr. Chambers and my explaining that I had been diagnosed on the streets in 2004 by my primary care Physician Dr. L. Wolfe MD that I tested positive for the Hep-C virus so had to be very careful on what substances, foods, medications that I put into my body as these things can have a direct and dramatic effect or consequence to my Liver. So my primary care physician ordered monthly blood test[s] to monitor my Liver function and mainly to see if there was any real or lasting effect that was being done to my compromised Liver? I explained all of this to Dr. Chambers and he was totally ambivalent to my personal medical need for keeping the status quo of the medications I had been taking for several years, that were not hurting my Liver or overall general health. As he wrote on page 7 of 14 (By proxy) of my 602 appeal, He was deliberately indifferent to my serious medical need[s] even after I stressed my utmost concerns in regards to my Liver function due to that fact I carried 2 strains of the Hep-C virus (1a and 2b) and it had been proven and shown in the past (via blood test on a monthly basis) that my viral load was stabilized between 250 thousand and 350 thousand. This means the psychotropic medications and the pain medications I had been on for several years were the least toxic to my Liver as proven by the monthly blood test. Dr. Chambers['s] deliberate indifference to my serious medical need after I explained all of this clearly to him is why I now name him as a defendant in this action.

(Dkt. No. 22 at 3.) The page marked "7 of 14" attached to the TAC states:

> Denied/Interviewed by Dr. Chambers on 7-11-08 relative to the issues identified in this appeal (change of medications). Wellbutrin is now a nonformulary medication per the new standardized CDCR statewide pharmacy and Therapeutics. This was discussed with you. The decision to change the use of this medication was made for safety issues. There are several criteria that must be met before this medication will be prescribed. Your case does not meet the criteria. Adjustments were made to your current psychotropic medications.

1   (Dkt. No. 22 at 15.)  In paragraph nine of the TAC, plaintiff further alleges:

2   > It was told to me verbally in person by both Dr. Chambers and Dr. Evans Psychiatrist that they had been ordered to stop or discontinue the psychotropic medications that CDCR had prescribed to me for many years that were working effectively in treating my Mental Health Issues but [due] to the fact that other inmate patients that had abused or misused these medications in the past that I was now going to in essence suffer for [their] mistakes.  So Dr. Franchechi had ordered both of these licensed Psychiatrists what they could and would prescribe to the inmate patients in DVI-Reception Center regardless of the medical need or necessity to prescribe the medications that worked and were the least toxic to My Liver and overall health.  Effectively tying these 2 psychiatrist[s] from prescribing the medications that would help me and not hurt me and that had been effective in treating my Mental Illness for many years.

10  (Dkt. No. 22 at 5.)

11              Plaintiff further alleges:

12  > The types of psychotropic medications that were started by CDCR psych services by various licensed psychiatrists over several years had been initiated by the Dept. of Corr. & Rehab. for many many years and there was no reason for them to make any changes to my medications.  Because they were both effective in treating my mental illness as well as not being toxic to my Liver as evidenced by the lab results attached from February 2008 and July 2008.  It clearly shows the toxic and detrimental effect of the different psychotropic medications that the psychiatrist at DVI forced me to take instead of the non-toxic psychotropic medications that I had been prescribed by CDCR parole Dept. and in custody.  Yet the psychiatrist at DVI-Reception Center Prison chose to ignore my pleas as well as the results of the blood test they performed in February 2008 and July 2008 (see attached).  I personally pleaded with every psychiatrist and medical personnel that I spoke to that I was a unique medical case both medically (Hep-C infection) and psychiatrically because the psychiatrist needed to take into consideration my serious medical condition in regards to giving me psychotropic medications that were the least toxic to my Liver as possible.  The psychiatrist[s] at DVI were completely deliberately indifferent to my cries for help.  So they prescribed unproven and untested anti-depressants for me to take (effexor, Remeron, Abilify etc. etc.) all of which I went blindly along with to the detriment of my Liver and overall general health.  At the present time I am only receiving one of the psychotropic medications of the 5 plus the pain medication (vycodin) that I was on.  I am currently only taking (Wellbutrin SR) twice a day/morning and nite.  At this point my Liver was made so toxic by those other psychotropic medications that CDCR psychiatrist[s] forced me to take instead of what I

3

1  begged and pleaded with them not to change for fear of the damage
2  to my weakened liver.  But this was all to no avail and now my liver has been damaged to the point that my Viral Load is just
3  going up and up with no end in sight, which means it is destroying my Liver and now bringing on my imminent death prematurely!
4  Because all of the psychiatric staff of professionals all the way up the chain and through the appeals process to Sacramento ignored my concerns about my ailing liver.  Making all of the said
5  defendants culpable in my pain and suffering and deliberate indifference to my serious medical need as they were all put on
6  notice by me in one way or another (verbally in person or via the 602 appeals process).  So under 42 USC 1983 Civil Code these
7  defendants are all liable and responsible in some way of causing undue harm to me and therefore I am entitled to monetary
8  compensation.

(Dkt. No. 22 at 26-27.)  Plaintiff claims that the new prescription regiment elevated plaintiff's viral load count, further injuring plaintiff's liver.  (Dkt. No. 22 at 27.)

Defendant Chambers argues that plaintiff fails to allege any facts demonstrating that Dr. Chambers acted with the requisite motive or intent required to evidence deliberate indifference under the Eighth Amendment.  (Dkt. No. 71-1 at 7.)  Defendant Chambers also claims plaintiff has alleged facts demonstrating, at most, medical negligence, which does not rise to the level of a constitutional violation, and failed to allege actual harm.

III.  <u>Legal Standards - Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedures provides for motions to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, <u>Erickson v. Pardus</u>, 551 U.S. 89 (2007), and construe the pleading in the light most favorable to the plaintiff.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969); <u>Meek v. County of Riverside</u>, 183 F.3d 962, 965 (9th Cir. 1999).  Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

4

1  statements do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Furthermore, a
2  claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at
3  570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the
4  court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
5  Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint
6  for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard
7  Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir.1990).

8        A motion to dismiss for failure to state a claim should not be granted unless it
9  appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which
10 would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In general, pro
11 se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner,
12 404 U.S. 519, 520 (1972). The court has an obligation to construe such pleadings liberally.
13 Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's
14 liberal interpretation of a pro se complaint may not supply essential elements of the claim that
15 were not pled. Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982).

16 IV.  Legal Standard for Eighth Amendment Claim

17       In order to state a claim for relief under the Eighth Amendment for inadequate
18 prison medical care, plaintiff must allege "deliberate indifference to serious medical needs." Jett
19 v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104
20 (1976)). A medical need is serious if "the failure to treat a prisoner's condition could result in
21 further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v.
22 Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other
23 grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate
24 indifference is proved by evidence that a prison official "knows of and disregards an excessive
25 risk to inmate health or safety; the official must both be aware of the facts from which the
26 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

Whether a defendant had requisite knowledge of a substantial risk is a question of fact and a fact finder may conclude that a defendant knew of a substantial risk based on the fact that the risk was obvious. Farmer, 511 U.S. at 842. While the obviousness of the risk is not conclusive, a defendant cannot escape liability if the evidence shows that the defendant merely refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Id. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted). Deliberate indifference may be shown by the way in which prison officials provide medical care, Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988), or "may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." Lolli v. County of Orange, 351 F.3d 410, 421 (9th Cir. 2003). Deliberate indifference in the medical context may also be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need. Jett, 439 F.3d at 1096. A mere difference of opinion between a prisoner and prison medical staff as to appropriate medical care does not give rise to a § 1983 claim. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

V. Application

Defendant first argues that plaintiff's claim against Dr. Chambers is unclear. To the contrary, review of the TAC reveals that plaintiff has stated sufficient facts to state a claim against Dr. Chambers. Liberally construed, plaintiff alleges that Dr. Chambers was deliberately indifferent to plaintiff's serious medical needs by refusing to prescribe plaintiff nonformulary medications that were proven effective in stabilizing plaintiff's viral loads over a period of years, and that plaintiff has sustained a huge increase in his viral load since defendants changed plaintiff's medication regimen, prescribing medications that allegedly injured plaintiff's liver.

1    Defendant further argues that plaintiff's claim is based on negligence, not
2 deliberate indifference.  It is true that deliberate indifference is a higher standard than negligence
3 or lack of ordinary due care for the prisoner's safety.  Farmer, 511 U.S. at 835.  "Neither
4 negligence nor gross negligence will constitute deliberate indifference." Clement v. California
5 Dep't of Corrections, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); see also Broughton v. Cutter
6 Labs., 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or
7 "medical malpractice" do not support a claim under § 1983).  The indifference must be
8 substantial.  The action must rise to a level of "unnecessary and wanton infliction of pain."
9 Estelle, 429 U.S. at 105-06.

10    However, a physician need not fail to treat an inmate altogether in order to violate
11 that inmate's Eighth Amendment rights.  See Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th
12 Cir. 1989) (summary judgment as to nurses reversed because the nurses "knew of Ortiz's head
13 injury but disregarded evidence of complications to which they had been specifically alerted.")
14 Rather, a failure to competently treat a serious medical condition, even if some treatment is
15 provided, may constitute deliberate indifference in a particular case.  Id.  In order to prevail on
16 such a claim, plaintiff must establish that the defendant's course of treatment was "medically
17 unacceptable under the circumstances," and that the defendant "chose this course in conscious
18 disregard of an excessive risk to plaintiff's health."  Jackson v. McIntosh, 90 F.3d 330, 332 (9th
19 Cir. 1996) (citing Farmer, 511 U.S. at 835-36).

20    Here, plaintiff does not argue that Dr. Chambers was merely negligent.  Instead,
21 plaintiff argues that Dr. Chambers was deliberately indifferent to plaintiff's requests to remain on
22 his prior, nonformulary medication regimen that treated plaintiff's mental illness with the "least
23 toxic and damaging" effect on plaintiff's liver over a number of years. (Dkt. No. 73 at 2.)  Also,
24 plaintiff alleges defendants prescribed him medications that were harmful to his liver.  See Chess
25 v. Dovey, 2011 WL 567375 (E.D. Cal. 2011) (summary judgment denied on Chess' claim that
26 defendants prescribed him pain medication that they knew was harmful to his liver because

1  "counsel for defendants never disputes, presents evidence regarding or even addresses plaintiff's
2  assertions that: (1) the medications the defendants prescribed were harmful to his liver; and (2)
3  that the defendants were aware these medications were harmful to plaintiff's liver but prescribed
4  them anyways.") On a motion to dismiss, plaintiff's allegations are accepted as true and
5  construed in the light most favorable to him, and because plaintiff is proceeding without counsel,
6  his pleading is liberally construed. Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005)
7  (citations omitted). Thus, plaintiff's allegations are sufficient to survive defendant's motion to
8  dismiss for failure to state a claim.

9      Finally, defendant Chambers contends that plaintiff's exhibits attached to his TAC
10 provide valid reasons for defendant Chambers' decision to modify plaintiff's medications, and
11 that the decision by the California Prison Health Care Services, states that "review of [plaintiff's]
12 medical records indicates [his] liver functioning is normal." (Dkt. No. 71-1 at 9.) Defendant
13 argues this demonstrates plaintiff has failed to allege "actual harm." (Id.) Defendant also claims
14 that plaintiff's statement that "there is no way to gauge what [defendants] did in the way of actual
15 damage to [his] liver" (TAC at 27), demonstrates plaintiff has failed to allege actual harm. (Dkt.
16 No. 71-1 at 9.)

17     "As a general rule, 'a district court may not consider any material beyond the
18 pleadings in ruling on a Rule 12(b)(6) motion.'" Lee v. City of Los Angeles, 250 F.3d 668, 688
19 (9th Cir. 2001) (citation omitted)). But when a complaint is accompanied by attached
20 documents, such documents are deemed part of the complaint and may be considered in
21 evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265,
22 1267 (9th Cir. 1987). However, defendant is mistaken in assuming that plaintiff has conceded
23 the factual representations in the responses to the appeals by attaching them to the TAC. The
24 attachment of a document as an exhibit to the complaint does not mean that the plaintiff has
25 adopted as true all the statements in the document. Furnace v. Sullivan, 2008 WL 4856826, at *5
26 (N.D. Cal. Nov. 10, 2008) (citing Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 674 (2d Cir.

1 1995)). Nothing in the TAC suggests that plaintiff was adopting as true the responses to
2 plaintiff's appeals. Thus, the attachment consists of factual assertions by the defendant, or
3 others, not the plaintiff. Defendant essentially argues plaintiff's allegations in the TAC are not
4 true. Defendant may, at a later stage of the litigation, choose to test the sufficiency of plaintiff's
5 evidence to prove his allegations, as well as the sufficiency of plaintiff's evidence to dispute the
6 defendant's factual claim that plaintiff has not sustained damage to his liver by the alternative
7 treatment provided. However, the instant motion is brought under Rule 12(b)(6) and is not the
8 procedure for disputing the facts alleged in the TAC. Rather, at this stage in the proceedings, the
9 court must take the factual allegations in plaintiff's TAC as true and construe them in a light most
10 favorable to the nonmoving party. Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (9th
11 Cir. 2002). The issue here is whether the facts alleged, if true, would entitle plaintiff to relief on
12 the claim asserted.

13         Accepting the truth of plaintiff's allegations, the TAC alleges more than a mere
14 difference of opinion. It alleges that defendant knew plaintiff was on a proven medication
15 protocol, but changed plaintiff's medications to avoid prescribing nonformulary drugs, and that
16 the revised medication regimen highly increased plaintiff's viral load, as evidenced by lab tests,
17 and the new medications allegedly damaged plaintiff's liver. In essence, plaintiff alleges that
18 defendant responded to plaintiff's serious medical needs by knowingly prescribing medications
19 that caused plaintiff more harm than good. Although defendant disputes these allegations, this is
20 not a motion pursuant to Rule 56. Plaintiff has set forth sufficient allegations to proceed on his
21 claim that defendant Chambers was deliberately indifferent to his medical needs.

22 VI. Conclusion

23         Accordingly, this court recommends that defendant Chambers' motion to dismiss
24 be denied.

25 ////

26 ////

IT IS HEREBY RECOMMENDED that:

1. Defendant Chambers' September 6, 2011 motion to dismiss (dkt. no. 71) be denied; and

2. Defendant Chambers be directed to file an answer within fourteen days of any district court order adopting the instant findings and recommendations.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 24, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

coat1830.mtd